1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12 | KELLY COLLIN, an individual, on      No. 2:24-cv-03236 WBS AC
   | behalf of herself and all others
13 | similarly situated,

14 |            Plaintiff,               MEMORANDUM AND ORDER RE:
                                         PLAINTIFF'S MOTION TO REMAND
15 |      v.

16 | CASCADE LIVING GROUP MANAGEMENT,
   | LLC, a Washington Limited
17 | Liability Company; CASCADE
   | LIVING GROUP — GRASS VALLEY,
18 | LLC, a Washington Limited
   | Liability Company; and DOES 1 TO
19 | 50,

20 |            Defendants.

21

22                        ----oo0oo----

23        Plaintiff Kelly Collin brought this putative wage-and-

24 hour class action in Nevada County Superior Court, alleging (1)

25 failure to pay minimum wages under Cal. Labor Code § 1197; (2)

26 failure to pay overtime wages under Labor Code § 510; (3) failure

27 to provide rest periods under Labor Code § 226.7; (4) failure to

28 provide meal periods under Labor Code §§ 226.7, 512; (5) failure

                               1

1   to maintain accurate employment records under Labor Code § 1174;

2   (6) failure to timely pay wages during employment under Labor

3   Code §§ 204, 210; (7) failure to pay wages at separation under

4   Labor Code § 203; (8) failure to reimburse business expenses

5   under Labor Code § 2802; (9) failure to provide accurate itemized

6   wage statements under Labor Code § 226; (10) failure to pay sick

7   pay under Labor Code § 246; and (11) violation of the Unfair

8   Competition Law, Cal. Bus. & Prof. Code § 17200.  (Compl. (Docket

9   No. 1-2).)  Defendants Cascade Living Group Management, LLC and

10  Cascade Living Group – Grass Valley, LLC removed to this court

11  based on jurisdiction under the Class Action Fairness Act

12  ("CAFA").  Plaintiff moves to remand the action to state court.

13  (Docket No. 5.)

14        Under the federal removal statute, "any civil action

15  brought in a State court of which the district courts of the

16  United States have original jurisdiction may be removed by the

17  defendant . . . to the district court of the United States for

18  the district . . . where such action is pending."  28 U.S.C. §

19  1441(a).  Under CAFA, the federal courts have original

20  jurisdiction over class actions in which the parties are

21  minimally diverse, the proposed class has at least 100 members,

22  and the aggregated amount in controversy exceeds $5,000,000.  28

23  U.S.C. § 1332(d)(2).  "[N]o antiremoval presumption attends cases

24  invoking CAFA, which Congress enacted to facilitate adjudication

25  of certain class actions in federal court."  Dart Cherokee Basin

26  Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).

27        Plaintiff disputes that the $5,000,000 amount in

28  controversy is satisfied.  "[I]f a defendant wants to pursue a

2

1  federal forum under CAFA, that defendant in a jurisdictional

2  dispute has the burden to put forward evidence showing that the

3  amount in controversy exceeds $5 million." Ibarra v. Manheim

4  Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015); see also

5  Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989,

6  992 (9th Cir. 2022) (the "ultimate question" is "whether

7  [defendant] met its burden of showing the amount in controversy

8  exceeded $5 million").

9       In determining whether the amount in controversy

10  requirement is satisfied, the court determines where the

11  preponderance of the evidence lies based on "proof" submitted by

12  the parties, including "affidavits, declarations, or 'other

13  summary-judgment-type evidence relevant to the amount in

14  controversy at the time of removal.'" See Ibarra, 775 F.3d at

15  1198 (citing Dart Cherokee, 574 U.S. at 88-89).  The amount in

16  controversy includes "damages (compensatory, punitive, or

17  otherwise) and the cost of complying with an injunction, as well

18  as attorneys' fees awarded under fee shifting statutes."

19  Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648-49

20  (9th Cir. 2016).

21       "[W]hen the claimed amount in controversy is

22  challenged[,] 'CAFA's requirements are to be tested by

23  consideration of real evidence and the reality of what is at

24  stake in the litigation, using reasonable assumptions underlying

25  the defendant's theory of damages exposure.'" Salter v. Quality

26  Carriers, Inc., 974 F.3d 959, 963 (9th Cir. 2020) (quoting

27  Ibarra, 775 F.3d at 1197-98) (emphasis added); see also Ibarra,

28  775 F.3d at 1199 ("[defendant] bears the burden to show that its

1   estimated amount in controversy relied on reasonable

2   assumptions").

3           The only evidence defendants provide is a declaration

4   from Stacy Rayner, the Vice President of Human Resources for

5   Cascade Living Group, LLC.  (See Rayner Decl. (Docket No. 1-5) ¶

6   1.)  Ms. Rayner attests that based on her review of business

7   records, the potential class[1] of all current and former non-

8   exempt employees from October 19, 2020 to the present contains

9   709 individuals.  (Id. ¶ 2.)  375 of those employees had been

10  terminated as of November 12, 2024.  (Id.)  Defendants compensate

11  non-exempt employees twice monthly.  (Id.)  During the class

12  period, potential class members worked a total of 15,963 two-week

13  pay periods, with 6,633 of those pay periods occurring from

14  November 12, 2023 to November 12, 2024.  (Id.)  The current

15  average hourly rate of pay for potential class members is $17.73.

16  (Id.)

17          In order to conclude that the amount in controversy

18  exceeds $5 million, the court would have to make a number of

19  assumptions.  Relying upon the sparse facts provided by the

20  Rayner declaration, defendants ask the court to find the

21  complaint puts at issue $2,162,347.98 for minimum wage violations

22  and associated liquidated damages and penalties; $141,591.81 for

23  overtime wage violations; $566,047.98 for rest period violations;

24  $566,047.98 for meal period violations; $1,596,300.00 for

25  penalties for untimely payment of wages; $1,594,800.00 for

26  ───────────────────

        [1]    The complaint defines the class as all individuals
27  employed by defendants as non-exempt employees in California
    beginning four years prior to the filing date of October 18,
28  2024.  (See Compl. ¶¶ 2-3.)

                                    4

1  penalties for untimely payment of wages at the end of employment;

2  $239,460.00 for unreimbursed business expenses; and $331,650.00

3  for failure to provide accurate itemized wage statements.

4  (Notice of Removal (Docket No. 1) at 8-17.)  These numbers bring

5  the total to $7,198,245.75, to which defendants add 25% of that

6  value for attorneys' fees (or $1,799,561.44), for a total of

7  $8,997,807.19.  (Id. at 19.)

8         The problem with defendants' figures is that they are

9  either untethered from the allegations of the complaint or

10 entirely unsupported by defendants' evidence.  Most glaringly,

11 defendants provide no evidence whatsoever concerning the full-

12 time vs. part-time composition of the workforce or shift lengths,

13 which are crucial to provide a reasonable estimate of the meal

14 and rest break claims and waiting time penalties.  See, e.g.,

15 Benitez v. Hyatt Corp., 722 F. Supp. 3d 1094, 1102 (S.D. Cal.

16 2024) ("multiple district courts have refused to credit waiting-

17 time-penalty estimates [under § 203] offered by Defendants who

18 fail to provide shift-length evidence") (collecting cases);

19 Holcomb v. Weiser Sec. Servs., Inc., 424 F. Supp. 3d 840, 846

20 (C.D. Cal. 2019) (defendants' estimated meal and rest break

21 violation rate was unsupported due to lack of information

22 concerning "the lengths of shifts, employees' part-time or full-

23 time status, or frequency of violations that may have occurred").

24         The information to support or refute defendants'

25 estimate of the amount in controversy would be in the possession

26 of defendants.  Defendants could easily have provided all of that

27 information if it existed, but they chose not to, instead

28 engaging in "mere speculation and conjecture" supported by

5

1   "unreasonable assumptions."  See Ibarra, 775 F.3d at 1197; see

2   also Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764

3   (9th Cir. 2013) (defendant's evidence was insufficient to

4   establish CAFA jurisdiction because "[t]he only evidence the

5   defendants proffer to support their calculation of the amount in

6   controversy is a declaration . . . which sets forth only the

7   number of employees during the relevant period, the number of pay

8   periods, and general information about hourly employee wages,"

9   bolstered by "speculative and self-serving assumptions about key

10  unknown variables").

11        This is to say nothing of the plain legal errors

12  underlying defendants' estimated attorneys' fees, which

13  improperly include claims not eligible under the fee shifting

14  statutes, see Fritsch v. Swift Transp. Co. of Ariz., LLC, 899

15  F.3d 785, 796 (9th Cir. 2018); Kirby v. Immoos Fire Prot., Inc.,

16  53 Cal. 4th 1244, 1248 (2012) (cited with approval in Naranjo v.

17  Spectrum Sec. Servs., Inc., 13 Cal. 5th 93, 110-11 (2022)); and

18  estimate of the penalties associated with untimely payment of

19  wages, which applies the wrong statute of limitations, see

20  Peppers v. Pac. Off. Automation, Inc., No. 23-cv-7181 JGB KKX,

21  2023 WL 8653142, at *5 (C.D. Cal. Dec. 14, 2023) (citing Cal.

22  Code Civ. Proc. § 340); Murphy v. Kenneth Cole Prods., Inc., 40

23  Cal. 4th 1094, 1103-04 (2007).

24        The amount in controversy in this action may or may not

25  exceed $5 million.  But defendants have failed to provide this

26  court with sufficient information to make that determination.  As

27  the employer, defendants are the only parties in possession of

28  the basic employment data that is fundamental to establishing the

1    amount in controversy.  Rather than providing that data, they

2    have chosen to play games with the court, presenting make-believe

3    figures and leaving the court to wring its hands over whether

4    those figures are "reasonable."  In attempting to evaluate

5    defendants' calculations, the court is left with few answers and

6    a lot of frustration.

7              In effect, defendants' "approach amounts to little more

8    than plucking [assumptions] out of the air and calling [them]

9    'reasonable' -- a wasteful and silly, but routine, exercise in

10   mathematical fantasyland."  See Peters v. TA Operating LLC, No.

11   22-cv-1831 JGB SHK, 2023 WL 1070350, at *9 (C.D. Cal. Jan. 26,

12   2023).  While defendants need not "provide evidence proving the

13   assumptions correct," the assumptions supporting defendants'

14   calculations must have "some reasonable ground underlying them."

15   Arias v. Residence Inn by Marriott, 936 F.3d 920, 925-27 (9th

16   Cir. 2019) (quoting Ibarra, 775 F.3d at 1199) (internal

17   quotations omitted).  Defendants' sweeping assumptions fall short

18   of the Ninth Circuit's guidance for reasonableness.  See id.

19             For the foregoing reasons, defendants have failed to

20   establish by a preponderance of the evidence that the amount in

21   controversy exceeds $5 million, and therefore have failed to show

22   that the court has jurisdiction under CAFA.  Of course, should it

23   subsequently become apparent that the amount in controversy in

24   fact exceeds $5 million, defendants will be free again remove to

25   federal court, as CAFA cases "may be removed at any time" subject

26   to the requirements of 28 U.S.C. §§ 1446(b)(1) and (b)(3).  See

27   Roth v. CHA Hollywood Med. Ctr., 720 F.3d 1121, 1126 (9th Cir.

28   2013); Rea v. Michaels Stores Inc., 742 F.3d 1234, 1238 (9th Cir.

2014).  But if defendants wanted to avail themselves of federal jurisdiction at this juncture, they should have made a good faith effort to satisfy their burden.

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 5) be, and the same thereby is, GRANTED.  This action is hereby REMANDED to the Superior Court of the State of California, in and for the County of Nevada.

Dated:  February 6, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

8